# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MATTHEW FABYANIC, Administrator of )
the Estate of NANCY ANN GLITSCH, )
Deceased, )
                   )
            Plaintiff, )
                   )
          v. )     02: 08-cv-0400
                   )
HARTFORD LIFE AND ACCIDENT )
INSURANCE COMPANY, )
                   )
          Defendant. )

## MEMORANDUM OPINION AND ORDER

March 18, 2009

       Presently pending before the Court for disposition are the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Defendant, Hartford Life and Accident Insurance Company (Document Nos. 16 and 17), and the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by Plaintiff, Matthew Fabyanic, Administrator of the Estate of Nancy Ann Glitsch, Deceased (Document Nos. 19 and 20).

       Also pending is the MOTION TO STRIKE PLAINTIFF'S APPENDICES, with brief in support, filed by Hartford Life and Accident Insurance Company (Document Nos. 23 and 24), the BRIEF IN OPPOSITION filed by Plaintiff, Matthew Fabyanic, Administrator of the Estate of Nancy Ann Glitsch, Deceased (Document No. 27), and the REPLY BRIEF filed by Hartford Life and Accident Insurance Company (Document No. 28.)

       The motions have been thoroughly briefed and are ripe for disposition.

## Summary Judgment Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, a court should grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Eichenlaub v. Township of Indiana,* 385 F.3d 274, 279 (3d Cir. 2004). In considering a motion for summary judgment, the Court views all evidence in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 465 U.S. 574, 587 (1986). The party opposing summary judgment must support each essential element of that opposition with evidence of record. *Celotex,* 477 U.S. at 322-34. On cross motions for summary judgment, the same standards and burdens apply. *See Applemans v. City of Phila.,* 826 F.2d 214, 216 (3d Cir. 1987).

## Background

A.      The Medical Treatment of Nancy Ann Glitsch, Decedent

Decedent, Nancy Ann Glitsch ("Ms. Glitsch"), was insured under a welfare benefit plan sponsored by the AFL-CIO Mutual Benefit Fund. Because Ms. Glitsch was a participant in that plan, her beneficiaries were potentially eligible to receive accidental death benefits that were made available through a group insurance policy issued by Hartford Life and Accident Insurance Company ("Hartford") to the AFL-CIO Mutual Benefit Fund, identified as Group Policy ADD-9922 ("Policy").

On March 16, 2006, Ms. Glitsch sustained multiple catastrophic injuries as a result of a motor vehicle accident, *to wit*: "left distal open comminuted femur fracture, right

communiuted tibial plateau fracture, pelvic fractures, left patella fracture, bilateral calcaneous fractures, rib fractures, spine fractures, bilateral nasal fractures, subarachnoid cerebral hemmorhage, lacerated transverse colon, and lacerated spleen." (HLAI 0142.) Ms. Glitsch was life flighted to UPMC Presbyterian Hospital, where she remained for approximately three months and had several surgeries during her lengthy hospitalization.

Gary S. Gruen, M.D., orthopaedic surgeon, treated Ms. Glitsch for her injuries. On July 13, 2006, Dr. Gruen prescribed for Ms. Glitsch fifty (50) tablets of Percocet, 1-2 tablets orally to be taken every six (6) hours for pain, and referred her to the Chronic Pain Clinic to receive her oral medication.

On October 3, 2006, Ms. Glitsch underwent an initial evaluation at Advanced Pain Medicine in Wexford, PA. At that time, she was taking eight (8) 5/325 mg tablets of Percocet, and six (6) 7.5 mg tablets of Vicadin per day for pain. As part of her treatment plan, Ms. Glitsch signed a narcotic contract, her Percocet and Vicadin were discontinued, and she was started on MS Contin (morphine) (HLAI 0096.) Mark R. LoDico, M.D., prescribed twenty-five (25) 60 mg of MS Contin to be taken every 8 - 12 hours as needed for pain.

On October 13, 2006, Ms. Glitsch saw Dianne Hornemann, CRNP, at Advanced Pain Medicine. Dr. LoDico reviewed Ms. Glitsch's treatment plan and approved an increase in her prescription for pain relief from 60 mg of MS Contin to be taken every 8 - 12 hours as needed for pain to 100 mg of MS Contin to be taken every 8 - 12 hours as needed for pain. Ms. Glitsch was advised that she should take the increased dosage only every 12 hours for the first couple of days and then increase to every 8 hours. (HLAI 0096-0097.)

Two days before her death, Ms. Glitsch was again seen at Advanced Pain Medicine on November 13, 2006, by Melissa Moon, D.O., who increased Ms. Glitsch's prescription to 200 mg MS Contin to be taken every 12 hours. At this visit, Dr. LoDico prescribed Ms. Glitsch sixty (60) 200 mg tablets of MS Contin tablets. However, the pharmacy filled Ms. Glitsch's prescription with one hundred twenty (120) 100 mg tablets of MS Contin.

On the late afternoon of November 15, 2006, Ronald Dalessendro, the fiancé of Ms. Glitsch, discovered her unresponsive at her home. The police and an ambulance were summoned, and Ms. Glitsch was pronounced dead at the scene. Ms. Glitsch was 51 years of age on the date of her death.

James W. Smith, M.D., Coroner of Beaver County, performed an autopsy on Ms. Glitsch. Dr. Smith determined that the cause of her death was accidental morphine intoxication. The toxicology portion of the autopsy was performed by Charles L. Winek, Ph.D., who found that Ms. Glitsch's morphine level was 495 ng/ml. Dr. Winek indicated that a therapeutic level would have been 100 ng/ml. (HLAI 0029.)

B.      The Policy

The Policy at issue provides that Hartford has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of this Policy." (HLAI 0006.) Pursuant to the terms of the Policy, benefits are payable if a covered person's injury results in loss of life within 365 days of the accident. The Policy defines "Injury" as a "bodily injury resulting directly from accident and independently of all other causes which occurs while the Covered Person is covered under the policy." (HLAI 0010.)

4

A specific exclusion of the Policy includes: "injury sustained while voluntarily taking drugs which federal law prohibits dispensing without a prescription, including sedatives, narcotics, barbituates, amphetamines, or hallucinogens, unless the drug is taken as prescribed or administered by a licensed physician." (HLAI 0011.) The Policy specifically provides that, if a claim is denied, a claimant or his representative "must appeal once to [Hartford] for a full and fair review," and, [a]s part of [the] review . . . [the claimant] may request, free of charge, copies of all documents, records, and other information relevant to [the] claim." (HLAI 0026.)

C.     The Benefit Claim and Appeal

Matthew Fabyanic ("Fabyanic"), decedent's son and the Administrator of the Estate of Nancy Glitsch, deceased, filed a written claim for Accidental Death benefits under the Policy on March 6, 2007. Fabyanic identified "Dr. Moon (pain management) and Dr. Gruen (orthopedic surgeon)" as the "doctors who treated deceased between date of accident and date of death." (HCAI 0049.)

As part of the Hartford review process, Hartford obtained Ms. Glitsch's medical and prescription history for the period January 2006 through November 2006, as well as the dosage of prescribed medications and pharmacies where these prescribed medications were filled. Additionally, in order to determine the therapeutic prescription levels, on August 7, 2007, the claim file along with prescription history was referred by Hartford to Nurse Consultant Kathleen M. Bell, RN, BSN, HCRM, CCM, CLNC, CDMS (HLAI 0023, 0184.) Ms. Bell utilized two references in determining the therapeutic and toxic or lethal levels of blood morphine: (1) "*Drug & Chemical Blood - Level Data 2004*" by Charles L. Winek, Ph.D.; and (2) *"Disposition of*

*Toxic Drugs & Chemicals in Man", 7th Ed..*, by Randall C. Baselt, Ph.D. Ms. Bell used the

Winek reference to determine the therapeutic level of morphine and the Baselt reference to

determine the toxic or lethal range of morphine. (HLAI 0169-170.)

Ms. Bell also investigated other possible causes of Ms. Glitsch's elevated morphine

levels, such as impaired liver or kidney function. (HLAI 0171.) The autopsy report stated that

Ms. Glitsch's liver and kidneys were healthy. Accordingly, Ms. Bell determined that "liver or

kidney disease did not factor into elevating [Ms. Glitsch's] Morphine Blood Level." (HLAI

0032.)

Ms. Bell determined that Ms. Glitsch did not take the MS Contin "as prescribed"

based upon her conclusions that (1) the "therapeutic level" for morphine in the blood is 100

ng/ml; (2) the "lethal level" for morphine in the blood is 200 ng/ml, and (3) Ms. Glitsch had a

blood level for morphine of 495 ng/ml at autopsy, which was "almost five (5) times the limit for

the therapeutic range." (HLAI 0184.)

By letter dated September 25, 2007, Tracy Arzt, Sr. Claims Examiner at Hartford,

informed Fabyanic that no benefits were payable under the terms of the Policy. Hartford

explained that because the "Toxicology Report indicates a Morphine level of 495 ng/ml, which

exceeded the therapeutic level and was in the lethal range, it is evident that her loss (sic) was the

result of influence of drugs not taken as prescribed by a physician and she did not suffer a

Bodily Injury independent of all other causes; therefore, her death does not constitute a covered

loss under the terms of the policy and no Accidental Death Benefits are payable." (HLAI 0185.)

Ms. Arzt advised that the decision to deny the claim for benefits was based upon Policy

language and all documents contained in the claim file, including the following specific information:

     1.     The Proof of Loss - Accidental Death claim form submitted by Fabyanic dated March 6, 2007;

     2.     Commonwealth of Pennsylvania Police Crash Reporting form dated March 16, 2006;

     3.     Certified Death Certificate from the Commonwealth of Pennsylvania;

     4.     Autopsy Report dated November 16, 2006;

     5.     Toxicological Laboratory Report;

     6.     Prescription history records;

     7.     Medical records from Dr. Moon and Dr. Gruen;

     8.     Review of claim file by Nurse Consultant, Clinical Case Manager - Kathleen M. Bell, RN, BSN, HCRM, CCM, CLNC, CDMS.

*(Id.)*

Ms. Arzt also invited Fabyanic to provide additional information to Hartford, which would assist Hartford in further evaluation of his claim:

> If you have any additional information, not previously submitted, which you believe will assist us in evaluating your claim for Accidental Death Benefits, please forward it to us for our consideration within sixty (60) days from the date of your receipt of this letter. <u>In particular, documentation that confirms that the loss was not the result from the influence of drugs and was taken as prescribed by a physician, may assist us in further evaluating your claim for benefits</u>. The Hartford will review any additional information you submit, along with the previously submitted information and notify you of the result of our review.

(HLAI 0185, emphasis added).

By letter dated October 18, 2007, Fabyanic, through counsel, appealed Hartford's denial.  At that time, Fabyanic only asked to review the documents Hartford relied upon to decide his claim; he did not submit any additional information. (HLAI 0196-197.)  On November 16, 2007, Hartford sent counsel for Fabyanic the requested documents and advised that it "will consider the appeal as incomplete at this time pending either receipt of additional information from you in support of the appeal or written notification from you that no additional information will be forthcoming and that the appeal review should proceed based on the information in the file."  (HLAI 0191.)

On November 21, 2007, counsel for Fabyanic submitted one letter in support of the appeal to Hartford which was written by William L. Pasquale, Jr., Deputy Coroner Beaver County, dated April 20, 2007, which states as follows:

> Dear Matt,
>
> Pursuant to our conversation regarding the possible causes of your mother's death I spoke by phone to Ron Dalesandro on Nov. 15, 2006 concerning any medications that your mother may have been taking.  He stated that she had been prescribed Morphine Sulfate 100mg. 120 tablets on Nov. 13, 2006.  She was to take 2 tablets every 12hrs. as needed.  He stated that there were 112 tablets still in the bottle on Nov. 15, 2006 the day of your mother's death.
> Respectfully,
>
> William L. Pasquale Jr.
> Deputy Coroner Beaver County

(HLAI 0210.)  Fabyanic did not provide any other information in support of his appeal.  Rather, his counsel requested "that the appeal review proceed based on the information in the file." (HLAI 0209.)

Based on that information, Hartford completed the appeal review process. By letter dated January 4, 2008, Hartford denied Fabyanic's appeal, stating that the additional evidence offered by Fabyanic did not change the decision of Hartford to deny the claim as documented in the September 27, 2007 denial letter. (HLAI 0203-205.)

D.    This Lawsuit

On or about February 12, 2008, Fabyanic commenced this action by the filing of a two-count Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, in which he alleged claims for breach of contract of insurance and bad faith based on the terms of the Policy. On March 20, 2008, Hartford removed the lawsuit to this Court on the basis that all state law claims seeking to recover benefits under an employee benefit plan are preempted by ERISA.

The parties have filed cross motions for summary judgment. Fabyanic argues that he is entitled to summary judgment because the determination of Hartford was arbitrary and capricious. Not surprisingly, Hartford contends that it is entitled to summary judgment because its decision was supported by the record evidence and, thus, was not arbitrary and capricious.

**Discussion**

1.    Standard of Review for a Benefits Denial Under ERISA

The first step in determining the merits of the parties' cross-motions for summary judgment is determining the standard of review which governs the Plan's denial of benefits. "ERISA does not specify the standard of review that a trial court should apply in an action for

wrongful denial of benefits." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 160 (3d Cir. 2007).

However, the United States Supreme Court has held that "a denial of benefits challenge under §

1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the

administrator or fiduciary discretionary authority to determine eligibility for benefits or to

construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115

(1989); *Metropolitan Life Insurance v. Glenn*, --- U.S. ----, 128 S. Ct. 2343, 2348 (2008). When

the benefit plan gives the administrator discretion to determine eligibility for benefits, the

decision must be reviewed under an "abuse of discretion" or "arbitrary and capricious" standard.

     *See Firestone Tire & Rubber Co.,* 489 U.S. at 115; *see also Michaels v. Equitable*

*Life Assurance Soc*., 2009 WL 19344, *4 (3d Cir. Jan. 5., 2009) (non-precedential opinion)

(noting that plan which gives administrator discretion is reviewed "under an arbitrary and

capricious standard"). Both of these phrases are understood to require a reviewing court to

affirm the Administrator unless an underlying interpretation or benefit determination was

unreasonable, irrational, or contrary to the language of the plan. See *Michaels,* 2009 WL 19344

at *4 ("To determine if a decision is arbitrary and capricious, this Court must consider whether

the administrator had a reasonable basis for its decision."); *Abnathya v. Hoffman-Laroche, Inc.*,

2 F.3d 40, 45 (3d Cir. 1993) (noting that under arbitrary and capricious standard, which is

"essentially the same as an 'abuse of discretion' standard, the court may overturn a decision if it

is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.")

     Hartford has contended from the outset of this case that its decision to deny benefits

was discretionary and, thus, its decision should be reviewed under an arbitrary and capricious

standard. Plaintiff argues that "[t]he Insurer's discretion is significantly limited, however, in

that Hartford is also obligated by its specific promise to 'pay benefits in accordance with the terms and conditions of this policy.' " Pl's Br. at 6. Therefore, according to Plaintiff, the Court should apply the *de novo* standard because "no discretion is granted to Hartford to determine eligibility for benefits. . . ." *Id.* at 7.

The Contract Provisions of the Plan at issue specifically state as follows: "Interpretation of Policy Terms and Conditions: We have <u>full discretion</u> and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of this Policy." (HLAI 0006) (emphasis added). Accordingly, the Court finds that the Plan unequivocally grants Hartford discretionary authority and, therefore, has little difficulty in concluding that a *de novo* review is not warranted.

However, this does not end the inquiry as the Court must next determine whether, in light of the recent decision of the United States Supreme Court in *Metropolitan Life Ins. v. Glenn*, the sliding scale of deferential review as first articulated by the United States Court of Appeals for the Third Circuit in *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000), remains appropriate. In *Post v. Hartford Ins. Co.*, 501 F.3d 154, 161 (3d Cir. 2007), the Court of Appeals explained:

> [t]he premise of the sliding scale approach is that courts should examine benefit denials on their facts to determine whether the administrator abused its discretion. To apply the approach, courts first consider the evidence that the administrator acted from an improper motive and heighten their level of scrutiny appropriately. Second, they review the merits of the decision and the evidence of impropriety together to determine whether the administrator properly exercised the discretion accorded it. If so, its decision stands; if not, the court steps into the shoes of the administrator and rules on the merits itself.

At its best, the sliding scale reduces to making a common-sense decision based on the evidence whether the administrator appropriately exercised its discretion. This theme, rather than getting bogged down in trying to find the perfect point on the sliding scale, should be district courts' touchstone.

*Id.* at 161-62 (*citing Pinto,* 214 F.3d at 391-394 (3d Cir.2000)).

Shortly thereafter, the United States Supreme Court issued its decision in *Metropolitan Life Ins. Co. v. Glenn,* --- U.S. ----, 128 S. Ct. 2343 (2008). In *Glenn,* the United States Supreme Court directed, with express reference to the Restatement (Second) of Trusts § 187, that a conflict of interest should simply constitute one of several factors in evaluating whether the administrator has procedurally or substantively abused its discretion in the decision-making process,[1] but that it should not trigger a change in standard of review. It further noted that both trust law and administrative law (on which judicial review of these ERISA decisions are based) require judges, in reviewing the lawfulness of benefit denials, to "tak[e] account of several different, often case-specific, factors, reaching a result by weighing all together." *See id.* at *2351 (citing Restatement § 187).

Hartford argues that the *Glenn* decision eliminated the heightened arbitrary and capricious standard of review, leaving only two applicable standards of review: *de novo* and arbitrary and capricious.

---

[1]    A structural conflict arises when an entity "both determines whether an employee is eligible for benefits" and also pays benefits under the plan. *Metropolitan Life Ins. v. Glenn,* --- U.S. ---, 128 S.Ct. 2343, 2348 (2008). A procedural conflict involves the examination of "the process by which the administrator came to its decision to determine whether there is evidence of bias." *Post v. Hartford Ins. Co.,* 501 F.3d 154, 165 (3d Cir. 2007) *(citing Pinto,* 214 F.3d at 393).

It is unclear whether the "sliding scale" approach in *Post* remains viable after *Glenn*. *See Kalp v. Life Ins. Co. Co. of North America*, No. 08-cv-1005, 2009 WL 261189 (W. D. Pa. Feb. 4, 2009) (citing cases). To date, the United States Court of Appeals for the Third Circuit has not issued a precedential opinion which analyzes the sliding scale approach outlined in *Post* in light of the *Glenn* decision. However, the holding in *Glenn* has recently been discussed in a non-precedential opinion issued by our appellate court in *Michaels v. The Equitable Life Assur. Society of U.S. Employees, Managers and Agents Long Term Disability Plan,* --- Fed. Appx. --, No. 07-4256, 2009 WL 19344 (3d Cir. Jan. 5, 2009) (non-precedential).

In *Michaels,* the potential applicability of *Glenn* to the sliding scale approach was not before the appellate court in reaching its decision. However, the appellate court opined that "under *Glenn,* a plan administrator's conflict of interest would not give rise to a heightened version of the arbitrary and capricious standard of review; instead, that conflict would represent one of several factors that informed the inquiry as to whether the administrator abused its discretion." *Id.* at *5.

It appears that at least the "touchstone" described in *Post,* i.e, that the reviewing court should make a "common-sense decision based on the evidence [as to] whether the administrator appropriately exercised its discretion," is consistent with the discussion in *Glenn*. In any event, as the Court explained *supra*, a *de novo* review it not warranted and the distinction, if any, between the *Post* and *Glenn* approaches to the "arbitrary and capricious" standard of review do not affect the outcome of this case.

At bottom, and as noted *supra,* the question before this Court is whether Hartford's decision was reasonable. *See Glenn*, 128 S.Ct. at *2360. (Scalia, J., dissenting) (noting that

"'unreasonableness <u>alone</u> suffices to establish an abuse of discretion") (emphasis in original); *id.* at *2356 (Roberts, C.J., concurring) (concluding that conflict of interest was irrelevant and unnecessary where [Administrator's] decision "was not the product of a principled and deliberative reasoning process").  The Court is mindful that the question before it is whether Fabyanic presented sufficient evidence to Hartford such to render its denial of benefits as arbitrary and capricious.  *See Moskalski v. Bayer Corp.*, 2008 WL 2096892, *4 (W.D. Pa. May 16, 2008).

2.       The Motion to Strike Plaintiff's Appendices

        Fabyanic asks the court to consider, *inter alia,* the following documents as part of the administrative record: (i) the Affidavit of Matthew Fabyanic; (ii) the Medical Records from UPMC Center for Liver Disease;  (iii) the Report of Charles Winek, Ph.D., dated December 18, 2007; and (iv) the Economy Borough Police Report dated November 15, 2006.   Hartford asks the Court to strike these exhibits and the related references in Plaintiff's Motion for Summary Judgment and accompanying brief that rely on those Appendices because these documents, undeniably, were not part of the Administrative Record before Hartford at the time it made the benefit decision at issue and, therefore, are not properly part of the record before this Court.

        Fabyanic responds that it is proper for the Court to consider these four (4) documents in determining the applicable standard of review because "they demonstrate the cursory, unqualified, and completely ineffectual claim investigation made by Hartford."  (Doc. 27 at 2.). Fabyanic fails to recognize, however, that these particular four (4) documents do not provide the Court with any information regarding the appropriate standard of review to utilize. *See Kosiba v.*

14

*Merck & Co.*, 384 F.3d 58, 67 n.5 (3d Cir. 2004) (noting that "when a court is deciding what standard of review to employ - arbitrary and capricious review, or some higher standard under *Pinto* - it may consider evidence of potential biases and conflicts of interest that is not found in the administrator's records). Such evidence may relate, for example, to a particular plan's funding mechanism, which has no bearing on the present lawsuit.

*Id.*

Moreover, as will be discussed *infra,* Fabyanic also fails to recognize that these four (4) documents were not in the Administrative Record because Plaintiff failed to submit them. Hartford's inability to consider evidence that Fabyanic failed to submit does not establish a procedural irregularity or bias. *See Doyle v. Nationwide Ins. Cos. & Affiliates Employee Health Care Plan*, 240 F. Supp.2d 328, 341 (E.D. Pa. 2003) (finding administrator's failure to consider a medical report did not constitute evidence of bias because plaintiff failed to submit the report until after the administrator issued its decision; *Mazur v. Hartford Life & Accident Ins. Co.*, 2007 WL 4233400, at *13 (W. D. Pa. Nov. 28, 2007) (finding no procedural anomaly due to lack of information in the administrative record because "[t]he burden to ensure that the administrative record on appeal is complete lay not with Hartford, but with the claimant."). Fabyanic and his counsel obtained Hartford's file, knew what was and was not in the administrative record before proceeding with the appeal; Hartford invited Fabyanic to supplement the record with any and all additional information which he believed would support his claim for accidental death benefits; and Fabyanic elected not to submit any of the documents at issue.

Accordingly, the Court will strike these four (4) documents and any related factual averments of Fabyanic which rely on those documents.

3.        The Merits of the Denial of Benefits

Now that the issue of the appropriate standard of review has been resolved, the Court now turns to the merits of whether Hartford properly exercised the discretion afforded under the Plan.  For this analysis, the Court may only review the evidence that was before the Administrator when it made the decision under review.  *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997).

Fabyanic argues strenuously that the Court should reverse the decision to deny benefits because Hartford failed to conduct a reasonable, fact-based review of the claim.   First, Fabyanic argues that "Hartford based its determination entirely upon the opinion of a Nurse Consultant employee, who reviewed records and then opined that the decedent had taken more pills than prescribed . . . . It does not appear, however, that the Nurse Consultant is either a medical doctor or toxicologist, nor that she has any specialized qualifications to determine what number of pills this particular patient would have to have taken in order to sustain a lethal overdose."  Pl's Br. at 3-4 (Doc. No. 20).

Next, Fabyanic argues that the opinion of the Nurse Consultant is "based upon the erroneous factual premise that the decedent did <u>not</u> have liver or kidney disease at the time of her death" and that "neither Hartford nor its Nurse Consultant made any effort to obtain a health history for the decedent."  *Id.* at 4.

Last, Fabyanic contends that "Hartford and the Nurse Consultant either failed to consider, or did not obtain, important factual information regarding the history of the involved prescription. This included the Police incident report, pharmacy records, and the actual prescription bottle for the prescription the decedent was using at the time of her death." *Id.* at 4-5. Hartford contends that the record evidence amply supports Hartford's decision to deny accidental death benefits.

The arguments will be addressed seriatim.

A.    There Is No Procedural Infirmity in Having A Nurse Consultant Review Medical Records

Fabyanic alleges that Hartford's use of a nurse consultant to review the medical records of Ms. Glitsch was unreasonable and constitutes a failure to provide a full and fair review of his claim.

There is no requirement that an administrator of an ERISA-governed benefits plan utilize a physician in reviewing claims. *See Martin v. Metro Life Ins. Co.,* No. Civ. A. 02:02-cv-215, 2002 WL 32072618 (E.D. Va. Sept. 23, 2002) ("There is no requirement that an administrator of an ERISA-governed benefits plan utilize a physician in reviewing claims. The Fourth Circuit has affirmed denials of claims where the only reviewing medical consultant was a nurse.") (citations omitted), *aff'd,* 62 Fed. Appx. 66 (4th Cir. May 6, 2003). In some cases, however, courts have considered the absence of a medical doctor in the review process evidence of an inadequate review. See *Gallagher v. Reliance Standard Life Ins. Co.*, 171 F. Supp. 2d 594

(W.D.N.C. 2001); *Edgerton v. CNA Ins. Co.*, 215 F. Supp. 2d 541 (E. D. Pa. 2002); however, the Court notes that these cases differ factually from the instant one.

If a plaintiff's doctors present strong evidence in favor of a claim, specialists may be needed to controvert it. For example, in *Gallagher*, the court disapproved of the defendant's use of its own nurse to provide the only contrary opinion which rebutted the plaintiff's physician and other medical experts' opinions that he was totally disabled. *Gallagher*, 171 F. Supp.2d at 603. Likewise, in *Edgerton*, the court was critical of the defendant's use of a registered nurse "given the strong evidence pertaining to disability in the record" from the plaintiff's treating physician.

In the instant case, however, as will be discussed in detail *infra,* there was no opinion from any doctor which even hinted that Ms. Glitch had taken the MS Contin as prescribed. Therefore, the Court finds that no physicians were needed for rebuttal.

Furthermore, the Court finds that there is no record evidence to suggest that Nurse Bell was not qualified to review the records in the administrative claim file. The record reflects that although Fabyanic, through counsel, was provided with a copy of Nurse Bell's report in the administrative process before the appeal review commenced, he did not raise any questions about her qualifications or her analysis until after this litigation commenced. In fact, Fabyanic, through counsel, directed that the appeal review should be based on the evidence contained in the administrative file, which included the uncontested report of Nurse Bell. Fabyanic asks this Court to assume that Nurse Bell is inherently not qualified simply because she is a nurse. The Court declines to make any such assumption. For these reasons, the Court finds Fabyanic's arguments to be without merit and finds and rules that the review by Hartford's nurse consultant constitutes a full and fair claim review.

B.        There Was No Record Evidence that Ms. Glitsch Suffered from Liver or Kidney
          Disease

Fabyanic next argues that the opinion of the Nurse Consultant was "based upon the

erroneous factual premise that the decedent did <u>not</u> have liver or kidney disease at the time of

her death" and that "neither Hartford nor its Nurse Consultant made any effort to obtain a health

history for the decedent."

The Court finds these argument to be without merit.  The administrative record

reflects that Hartford reviewed Ms. Glitsch's death certificate, autopsy report, toxicology report,

medical records, and prescription drug records to assess Fabyanic's claim.  (HLAI 0137; 0161;

0169-72.)  Nurse Bell specifically reviewed Hartford's claim file to evaluate whether Ms.

Glitsch took the morphine as prescribed. (HLAI 0139.)  The record reflects that Nurse Bell used

well-known references to determine the toxic or lethal levels of blood morphine.  She then

compared those levels with the significantly higher levels of morphine found in Ms. Glitsch's

blood.

Hartford also investigated whether there might be some other explanation for Ms.

Glitsch's high morphine levels, such as impaired liver or kidney functions.  The administrative

record contains no evidence to support any such alternative explanation.  (HLAI  0172.)  In fact,

to the contrary, the autopsy report specifically stated that Ms. Glitsch's liver was "without any

abnormalities" and that her kidneys were "without malformation,"  (HLAI 0032).  Ms. Glitsch's

medical records reflected that her general health was "Excellent." (HALI 0116; HLAI 0133).

Hartford also collected Ms. Glitsch's prescription drug records for a period of one year prior to

her death.  None of these records presented any indication that Ms. Glitsch suffered from a condition that would affect her physiologic ability to process morphine.

In fact, in October 2006, Ms. Glitsch herself reported that she had never had any health problems involving "kidney disease" or "liver diseases/hepatitis/cirrhosis."  (HLAI 0116.) Furthermore, Fabyanic never reported to Hartford that Ms. Glitsch had any form of liver disease or dysfunction.

However, the toxicology report undeniably established that Ms. Glitsch had five (5) times the therapeutic level of morphine in her blood.  Nurse Bell found that Ms. Glitsch's liver and kidney function "did not factor into elevating her Morphine Blood Level."  (HLAI 0171.) Based on this information, Nurse Bell concluded that Ms. Glitsch took more medication than prescribed, which resulted in the significantly elevated morphine levels in her system.

Fabyanic also contends that neither Hartford nor Nurse Bell made any effort to obtain a health history for the decedent.  A review of the claim file quickly dispels this contention. First, the administrative file clearly contains the medical records of both Ms. Glitsch's medical and prescription history for the period January 2006 through November 2006, as well as dosage of prescribed medications and pharmacies where these prescribed medications were filled.   The records of neither Dr. Moon nor Dr. Gruen reflected any indication that Ms. Glitsch "suffered from significant liver disease" as Plaintiff now asserts.  Pl's Br. at 12 (Doc. 20).  In fact, both these physicians reported that Ms. Glitsch's general health was excellent.

Next, Fabyanic attempts to cast doubt on the legitimacy of Hartford's decision by focusing on evidence that he contends should have been, but was not, part of the administrative record.  Specifically, Fabyanic argues that Hartford did not act diligently to obtain the medical

records of Ms. Glitsch from UPMC Center for Liver Disease, where Ms. Glitsch was treated for chronic hepatitis C in 2004. Fabyanic contends that the information in these records "was critical to its determination."

"The burden to ensure that the administrative record on appeal is complete lay not with Hartford, but with the Plaintiff." *Mazur v. Hartford Life & Accident Ins. Co.*, No. 06-01045, 2007 WL 4233400 (W.D. Pa. 2007). *See also Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F.3d 287, 298 (5th Cir. 1999) ("There is no justifiable basis for placing the burden solely on the administrator to generate evidence relevant to deciding the claim, which may or may not be available to it, or which may be more readily available to the claimant. If the claimant has relevant information in his control, it is not only inappropriate but inefficient to require the administrator to obtain that information in the absence of the claimant's active cooperation.")

The administrative record clearly reflects that Hartford sent its administrative claim file to Fabyanic, through his counsel, and invited Fabyanic to supplement the record with any additional material relevant to the claim. Fabyanic acknowledged that he had "reviewed the file materials" and that Hartford should proceed "based on the information in the file." (HLAI 0209.) *See Elliott v. Sara Lee Corp.,* 190 F.3d 601, 608 (4th Cir. 1999) (noting that plaintiff who was invited to provide additional information in support of appeal and failed to do so "cannot now prevail on an argument that [defendant] had insufficient evidence to make a reasoned decision.")

In sum, the burden to provide Hartford with the information that Fabyanic (a) had in his possession, and /or (b) knew that Hartford did not have, rested with Fabyanic. *See Mazur*, at * 14. Fabyanic should have seen that the alleged "critical" medical records from UPMC Center

for Liver Disease were not in the record. "Any lack of vigilance in ensuring that the administrative was complete appears to be attributable to" Fabyanic, not Hartford. *Id.*

C.      There is No Record Evidence that Ms. Glitsch Followed the Directions of Her Physician

Finally, the Court finds that Fabyanic's argument that Hartford failed to consider evidence from which it may reasonably be concluded that Ms. Glitsch took her medication as prescribed  is without merit.  The only material Fabyanic submitted in support of his appeal was a single letter from Beaver County Deputy Coroner. (HLAI 0210.)  In that letter, the coroner relayed a conversation he had with Ms. Glitsch's fiance in which the fiance told him that there were 112 morphine tablets in the prescription bottle on the date of Ms. Glitsch's death.  Plaintiff contends that this letter is indisputable proof that Ms. Glitsch took her medication as prescribed. A review of the letter confirms that the Deputy Coroner did not state that Ms. Glitsch took her medication as prescribed, nor did he opine about Ms. Glitsch's cause of death.  Significantly, the coroner's letter provides no explanation of how or why Ms. Glitsch's morphine level could have been five (5) times the therapeutic limit, if she had taken the medicine as prescribed.  The Court finds that the coroner's letter provides no insight into whether Ms. Glitsch took her medication as prescribed.

Fabyanic is asking the Court to speculate, based on the coroner's letter, as to the frequency with which Ms. Glitsch took her medication.  The fact that a certain number of pills were allegedly missing from her bottle simply does not mean that she took her pills as

prescribed. The number of pills allegedly missing from her bottle does not establish when the pills were taken or how many were taken at a time.

## Conclusion

At the conclusion of its review, Hartford ultimately determined that the death of Ms. Glitsch was the result of Morphine Intoxication at a lethal level, which was "evidence that her loss was the result of influence of drugs not taken as prescribed by a physician . . . ." The Court finds and rules that this review was reasoned and principled and, consequently, the decision to deny Fabyanic's claim for Accidental Death Benefits was not arbitrary and capricious.

In the alternative, even if the Court were to apply a *de novo* standard of review, the Court finds and rules that the denial of Fabyanic's claim was correct and is supported by the administrative record. ERISA requires that claim administrators give plan participant appeals a "full and fair" review so that an administrator's decision is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence." 29 U.S.C. § 1332(a). Here, the summary judgment record reflects that Hartford reviewed the medical records from Drs. Moon and Gruen, had the claim file reviewed by Nurse Kathleen Bell, and invited Fabyanic to provide additional documentation to support his claim. In response to this invitation, Fabyanic provided a letter from Deputy Coroner William L. Pasquale, Jr. This sole piece of additional documentation was reviewed in conjunction with the entire claim file as part of the appeals process, but provided Hartford with no insight into whether Ms. Glitsch took her medication as prescribed. The lengthy claim review process led Hartford to the reasonable conclusion that the death of Ms. Glitsch was the result of Morphine Intoxication at a lethal level, which was

"evidence that her loss was the result of influence of drugs not taken as prescribed by a physician . . . ."

In taking the place of Hartford under a *de novo* standard of review, this Court must weigh all of the evidence available to Hartford at the time of the benefits decision and determine what a reasonable decision should have been. In this case, the Court finds that the evidence weighs heavily in favor of a finding that the death of Ms. Glitsch was the result of the influence of drugs not taken as prescribed by a physician. There is no objective evidence to support Fabyanic's claim that Ms. Glitsch used the prescribed medications properly.

Accordingly, even under a *de novo* review, the Court finds and rules that Hartford's decision to deny benefits must be upheld as the record lacks evidence sufficient to support Fabyanic's claim that Ms. Glitsch used the prescribed medications properly.

An appropriate Order follows.


McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MATTHEW FABYANIC, Administrator of )
the Estate of NANCY ANN GLITSCH, )
Deceased, )
           )
            Plaintiff, )
           )
            v. )      02: 08-cv-0400
           )
HARTFORD LIFE AND ACCIDENT )
INSURANCE COMPANY, )
           )
            Defendant. )

**ORDER OF COURT**

AND NOW, this 18th day of March, 2009, in accordance with the foregoing

Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

(1)      The Motion to Strike filed by Defendant, The Hartford Life and Accident

Insurance Company, is **GRANTED**.  Specifically, Plaintiff's Appendices 6, 7, 10 and 11, and

and any related factual averments which rely on those documents, are hereby stricken from the

record;

(2)      The Motion for Summary Judgment filed by Plaintiff, Matthew Fabyanic,

Administrator of the Estate of Nancy Ann Glitsch, Deceased, is **DENIED**; and

(3)      The Motion for Summary Judgment filed by Defendant, The Hartford Life

and Accident Insurance Company, is **GRANTED.**

The Clerk is ordered to docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:        Edward J. Balzarini , Jr., Esquire
Balzarini & Watson
Email: bw@balzariniandwatson.com

Michael Balzarini, Esquire
Balzarini & Watson
Email: mbalzar@nauticom.net

Brian P. Downey, Esquire
Pepper, Hamilton & Scheetz
Email: downeyb@pepperlaw.com

Amber Schuknecht Martin, Esquire
Pepper Hamilton
Email: martinas@pepperlaw.com